# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nathan Snell,<br>on behalf of himself and other<br>similarly situated individuals, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| S&F Communications, Inc.,<br>Sophie Gabler, and<br>Fernando Huerta, | |
| Defendants. | |

---

## COLLECTIVE ACTION COMPLAINT

Plaintiff Nathan Snell, on behalf of himself and all others similarly situated, by and through his undersigned counsel for his Collective Action Complaint against Defendants, alleges as follows:

1. Plaintiff brings these claims on behalf of himself and all similarly situated persons for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. against Defendants S&F Communications, Inc., Sophie Gabler, and Fernando Huerta (collectively, "Defendants") for misclassifying their Cable Installation Technicians ("Technicians") as "independent contractors" and failing to pay overtime compensation. Plaintiff's FLSA claims are asserted as a collective action pursuant to FLSA Section 216(b). 29 U.S.C. § 216(b).

2. Plaintiff and all similarly situated persons who work or worked for Defendants as Technicians perform non-exempt duties as employees, are paid on a piece-rate basis, and are entitled to unpaid overtime pay, liquidated damages, and attorney fees as allowed by the FLSA.

1

3.      Plaintiff and all similarly situated persons have typically worked more than forty (40) hours in a workweek. However, because Defendants misclassified Plaintiff and similarly situated Technicians as independent contractors, they have never paid such persons an overtime premium, as required under the FLSA, for hours worked over forty in a workweek.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.

5.      Venue properly lies in this judicial district under 28 U.S.C. § 1391 because Defendants conduct business in this district, Plaintiff and many if not all similarly situated persons work or worked for Defendants in this district, and a substantial part of the events giving rise to this action occurred in this district.

## PARTIES

6.      Plaintiff NATHAN SNELL worked for S&F Communications, Inc. from May 2017 to April 16, 2018. He worked as a Technician for that entire period. He is a resident of Elk River, Minnesota. Pursuant to 29 U.S.C. § 216(b), his written consent to participate in this action is attached hereto as Exhibit A.

7.      Plaintiff brings this action on behalf of himself and all other similarly situated individuals (the "FLSA Collective") pursuant to the FLSA, 29 U.S.C. § 216(b). Plaintiff and the FLSA Collective are current or former Technicians who worked for Defendants as employees within the meaning of the FLSA and were paid on a piece-rate basis within three years of the date this Complaint was filed. *See* 29 U.S.C. § 225(a). The proposed FLSA Collective class is defined as follows: *All persons who worked for Defendants as Cable Installation Technicians*

*and, at any time within three years prior to the filing of the Complaint, worked more than 40 hours in a workweek without receiving overtime pay premiums as required by the FLSA.*

8. As this case proceeds, it is likely that other individuals will file consent forms and join as "opt-in" plaintiffs.

9. Defendant S&F COMMUNICATIONS, INC. is a Minnesota corporation domiciled in the State of Minnesota and conducting business within the State of Minnesota. S&F provides cable installation services, installing video, phone and internet services for residential Comcast customers throughout Minnesota and parts of Wisconsin.

10. Defendant SOPHIE GABLER is the "Owner" of S&F Communications, Inc. At all relevant times, she has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d). Her primary place of business is 4126 Goldenrod Ln N, Plymouth, MN 55441.

11. Defendant FERNANDO HUERTA is the "Operations Manager" and/or "President of Operations" of S&F Communications, Inc. At all relevant times, he has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d). His primary place of business is 4126 Goldenrod Ln N, Plymouth, MN 55441.

12. At all relevant times, Defendants Sophie Gabler and Fernando Huerta have been corporate officers and/or directors of S&F Communications, Inc., a Minnesota corporation with principal executive office address at 4126 Goldenrod Ln N, Plymouth, MN 55441. The "S" and "F" in "S&F Communications" refer to <u>S</u>ophie Gabler and <u>F</u>ernando Huerta, respectively.

## **COVERAGE UNDER THE FLSA**

13. At all relevant times, upon information and belief, Defendants' gross annual sales made or business done has been in excess of $500,000, in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

14. Plaintiff was an "employee" of Defendants within the meaning of the FLSA and was engaged in interstate commerce as defined by 29 U.S.C. § 206(a) and § 207(a)(1).

15. Defendants are covered "employers" as defined by 29 U.S.C. § 203(d).

16. Defendants have employed two or more persons, including Plaintiff, who are or were "engaged in commerce or in the production of goods for commerce," or have had "employees handling, selling, or otherwise working on goods or materials that have been moved and/or produced for commerce by any person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

17. Defendants' workers, including Plaintiff and all Technicians, are subject to the provisions of 29 U.S.C. § 206.

## FACTUAL AND COLLECTIVE ACTION ALLEGATIONS

**I. The Work Performed By Plaintiff and the FLSA Collective**

18. Plaintiff and the FLSA Collective are individuals who work or worked for Defendants as Technicians and were paid on a piece-rate basis during the applicable statutory period. The job of a Technician involves installing Comcast cable, phone, and internet services in residential customers' homes.

19. Some Technicians also respond to "trouble calls," which are service or repair jobs. When a Comcast customer's cable, phone, or internet goes out, a Technician can be sent out to fix the problem.

20. The well-defined job duties performed by all Technicians in the FLSA Collective do not qualify for any exemption from the overtime requirements of the FLSA.

21. The essential job duties include:

    a. Installing cable, phone, and internet services at residential homes and apartments;

    b.    Running new cable lines from telephone poles or curbside tap boxes into residential homes and apartments;

    c.    Installing new outlets in order to connect cable services;

    d.    Checking cable lines, poles, and boxes outside of residential homes for proper signals;

    e.    Making sure all devices meet Comcast specifications; and

    f.    Performing system checks on newly installed equipment to make sure the equipment is running correctly.

## II. Plaintiff and the FLSA Collective Were Paid Pursuant to a Piece-Rate System that Did Not Include a Premium for their Substantial Overtime Hours

22. Defendants determine Technicians' pay by establishing piece-rates for a detailed list of services and installations in a variety of conditions. For example, Technicians are paid a specified rate each time they set up cable TV, hi-speed internet, and a phone system in a customer's home, depending on the type of installation. Likewise, Technicians are paid a specified rate for each new outlet they have to create in a home, or for each new aerial cable line they have to connect from a utility pole to a home.

23. Piece-rates range from $1.50 to over $40 depending on the service or item provided and installed.

24. When Plaintiff was hired in May 2017, he was provided a piece-rate chart that broke down the piece-rates for each task he completed or piece of equipment he installed. Plaintiff and the FLSA Collective were told that there were three piece-rate tiers, and that as a Technician advanced, he/she would be placed under a higher-tiered piece-rate chart. However, Plaintiff and the FLSA Collective were never provided subsequent piece-rate charts. At the time

of his termination, Plaintiff was told he was a "Tier 3.5 Technician", but he had never been provided a "Tier 3.5 Technician" piece-rate chart.

25. Technicians are required to perform certain necessary work on a daily basis for which no piece-rate is given. For example, there is no piece-rate for required work tasks including:

   a. Drive time to and between job sites;

   b. Attending mandatory S&F meetings;

   c. Organizing tools;

   d. Going to the warehouse to collect equipment, which occurred at least once per week;

   e. Cleaning work vehicles to S&F standards;

   f. Entering data into online billing and job tracking systems;

   g. Towing/repairing disabled work vehicles;

   h. Training new Technicians; and

   i. Assisting other Technicians as needed, either in person or over the phone.

26. Technicians are not paid any piece-rate payments for a job if they are unable to complete a job with a passing system check. Defendants have told the Technicians that they are paid approximately $10 for a failing job, regardless of the amount of time spent on the job, or the reason for the failure. In addition, if a customer is not home when a Technician arrives, Defendants have told the Technicians that they will receive a flat-rate of $10 for the job. But because Technicians did not receive itemized payroll reports, Plaintiff is unaware if he or other Technicians truly received the $10 payments for incomplete jobs.

27. The number of hours Plaintiff worked each week varied depending on the volume of work Defendants assigned to him in a particular week. Technicians are required to work at least 40 hours per week, but are frequently assigned by Defendants to work more.

28. Plaintiff had little discretion in how many hours he worked. Defendants could require Plaintiff to work additional hours or days if that is what was needed to complete all of the routes assigned to S&F.

29. Plaintiff estimates that he consistently worked 50 to 60 hours per week or more. Defendants did not compensate him or other Technicians with an overtime premium for the overtime hours they worked after 40 in a workweek.

30. Defendants are aware that Plaintiff and the FLSA Collective worked more than 40 hours per week, because they scheduled and required Plaintiff and the FLSA Collective to work more than 40 hours in a workweek. Defendants required Plaintiff and the FLSA Collective to work at least five days per week and frequently assigned them to work six or seven days per week, often for months at a time. If a Technician needed to take time off, Defendant would require him or her to make the time up on their scheduled day off. Defendants frequently assigned Technicians to keep working late into the evening.

31. Technicians are required by Defendants to log on to a system called Penguin and a system called Tech 360 every morning between 6:30 a.m. and 7:00 a.m. Logging into Penguin and Tech 360 means that Technicians are available for jobs, and can be dispatched at a moment's notice. If Technicians are not logged on at the appointed time on a day on which they are scheduled to work, Defendants are notified by Penguin and then Defendants contact the Technicians and request that they log on.

32. Technicians sometimes are required to perform work tasks even before logging into Penguin and Tech 360. For example, per the Technician Policy, all Technicians are required to pick up supplies at the warehouse before their shift. And if Technicians need additional supplies throughout the week, they are expected to pick up the supplies from the warehouse before logging in, so that they are available to receive their first job by 7:00 a.m. and be at their first installation appointment no later than 8:00 a.m.

33. Throughout the day, Technicians activities were logged. The system would note when they were on a particular job for a particular customer.

34. At the end of the day, Technicians log off of Penguin and note "end of day" in Tech 360. When a Technician logs "end of day", they will not be assigned any new jobs for that day. Defendants told Technicians that they were not permitted to go "end of day" before 6:00 or 6:30 p.m., and that if they are assigned a job shortly before then, they must take it, even if it would require working late into the evening. If a Technician logs "end of day" prior to the end of his or her scheduled shift without a reason, Comcast notifies S&F.

35. Technicians often are required to perform work tasks after logging out at the end of their regular shift. For example, Technicians are required by Defendants to clean and organize their vehicles daily, which they typically do after logging out. And if a Technician logs off and then gets a call from Defendant or a fellow Technician that a Technician needs help completing a job, the Technician performs the work without logging back into Penguin or Tech 360.

36. Technicians regularly perform compensable work both prior to logging into Penguin and Tech 360 and after logging out, and they are not compensated for that work. The Penguin and Tech360 records will therefore provide only a partial account of the Technicians' total compensable hours.

37. Technicians were occasionally asked to perform various other tasks for Defendants on their days off, such as cleaning or fixing company vehicles or working on updating company policies. Defendants promised Technicians various lump sum payments for these tasks, but, because Plaintiff and the FLSA Collective never received itemized pay sheets, Plaintiff is unaware if he or other Technicians ever received payment for performing these tasks.

## II. Plaintiff And Similarly Situated Technicians Are Misclassified As Independent Contractors

38. Plaintiff and the FLSA Collective who work for Defendants were and are uniformly misclassified as independent contractors when, in fact, they are employees, since at least February of 2017.

39. Prior to approximately February of 2017, Technicians were paid as employees on a piece-rate basis, and received W-2 tax forms for their work. In approximately February of 2017, Defendants began to pay Technicians as independent contractors, and they have received 1099 tax forms since then. At that time, Defendants told Technicians that they no longer needed to track their hours (which they had been required to underreport by excluding substantial work activities), but otherwise there were no appreciable changes to the job.

40. Plaintiff and the FLSA Collective were each required to sign an "S&F Technician Contract," which claimed the Technicians were "contractors." This claim, however, is contradicted by written rules, policies, procedures and requirements with which Plaintiff and the FLSA Collective must comply.

41. Plaintiff and the FLSA Collective are provided little or no discretion or independent judgment in the method or manner that their work was performed. Instead, all aspects of Plaintiff and the FLSA Collective's job duties are controlled by Defendants.

42. Defendants retain complete and total control over the activities of Plaintiff and the FLSA Collective and regulate all aspects of the job. Defendants control the schedule, the method and manner by which their work is performed, the location to which they must travel, and the amount they are to be paid.

43. Defendants control the Plaintiff's and the FLSA Collective's weekly schedule. Defendants require Technicians to work at least five days per week. If a Technician has to take a day off, Defendants require him or her to work an additional day of the week. There have been many months when Defendants required Plaintiff and the FLSA Collective to work 6 or 7 days a week.

44. Defendants issued and enforced a "Technician Policy" that included a mandatory dress code. This policy required Technicians to wear tan pants or jeans, boots with a 1-inch heel, and a yellow/orange safety vest. Defendants provided Plaintiff and the FLSA Collective with a uniform shirt, which was a polo shirt that said "TAK" or "Xfinity" on it. Defendants also provided and mandated that Plaintiff and the FLSA Collective wear a Comcast ID badge that allowed customers to identify them as Comcast service technicians.

45. Plaintiff and the FLSA Collective are required to comply with Defendants' Technician Policy, which outlines a number of rules and procedures, including when and how technicians should start and end their day. For example, Defendants' Technician Policy states: "All Techs are required to go to the warehouse every Friday at 0615am for new equipment and supplies," "All Techs need to be logged on to TechNet or Tech 360 by 0645am," "You will not leave or close a job with a fail unless told to do so by a Supervisor," "All technicians <u>MUST</u> be on there [sic] job by 0805am no later, unless good reason," and "Every tech will go on group chat and share there [sic] points for the day and to let us know you are EOD (End of Day)".

46.     Defendants' Technician Policy controls Plaintiff's and the FLSA Collective's ability to take time off from work, and sets forth procedures for requesting a day off. For example, the Technician Policy states, "All Technicians must report to all meetings on time. Failure can result in working on a day off," "If you need days off give 2 weeks notice at the minimum. Send an email to Sophie and Fernando," and "If you are not able to work due to emergencies/sick let your supervisor know before 0630 am."

47.     Defendants' Technician Policy addresses what Plaintiff and the FLSA Collective must do in the event there is a problem at a job. For example, the Technician Policy states, "If you are struggling on a job call your Lead Techs/Supervisor/Fernando."

48.     The Technician Policy controls the materials and tools involved in the job, stating, "Before leaving a job check all your tools to make sure you have them. Lost tools can result in money taken from your check/or you will need to replace them."

49.     Plaintiff and the FLSA Collective are required to comply with Defendants' "Vehicle Policy", which addresses vehicle cleanliness and maintenance, and rules regarding where to park the vehicle and what materials can be kept in the vehicle overnight. The Vehicle Policy states that Technicians must notify a Supervisor of any vehicle issues.

50.     Plaintiff and the FLSA Collective are required to comply with Defendants' "Customer Interaction Requirements." This Customer Interaction Policy details 19 steps that Technicians must follow while at a customer's home, from what to say when the customer answers the door to performing a final walkthrough and tool check. For example, it prohibits Technicians from sitting on the customer's furniture, and requires them to ask the customers before using their restroom.

51. Defendants control line installation procedures through a five-step "Line Work" policy. This policy outlines what Technicians must do to properly maintain the cable line from the box located outside of a house to the equipment installed inside the home in order to successfully bring a signal to all of the customer's the equipment and/or devices. This policy details how Technicians must start by examining the box outside the house, then examine the cable box inside the house, then check such things as the outlets and other equipment needed to get the cable service up and running.

52. Defendants trained Technicians to perform all functions of their job through use of a 3-phase Training Outline. Most or all Technicians had little to no previous experience in cable instruction. New Technicians were required to shadow more experienced Technicians. Training was complete when the trainer felt the trainee was able to successfully perform the installation tasks on his own to Defendants' standards. They were paid $500 per week during training.

53. Defendants also regularly send emails to Technicians setting new procedures, guidelines, and other parameters that they must follow in their work. They make clear that failure to abide by these expectations would result in discipline. For example, one email informed Technicians that failure to inform a supervisor about a "failing PHT" (a system test that reveals which parts of the newly installed equipment are online and which are not working) prior to closing a job will result in the Technician being pulled from the field for the next day's route, which means that they are effectively put on an unpaid suspension.

54. Plaintiff and the FLSA Collective are not in business for themselves nor truly "independent", but rather are economically dependent upon Defendants for their employment. Plaintiff and the FLSA Collective do not have any of their own customers or the ability to gain

customers on their own. In fact, Defendants tell them that they are not allowed to perform cable installations for anyone else, and members of the FLSA Collective were warned by Defendants that they are subject to non-compete agreements.

55. Plaintiff and the FLSA Collective have no genuine ability to negotiate different or higher piece rates for their work. Defendants set the Technicians' piece rates at their sole discretion. In fact, Defendants fail to provide Technicians with current and accurate information about their piece rates.

56. Plaintiff's and the FLSA Collective's financial investment in their trade is minor. Defendants provide the work vehicles, tools and equipment. Technicians are prohibited from using the S&F–provided vehicles for more than de minimis personal use. If Technicians lose or damage S&F–provided tools and equipment, Defendants deduct the cost of replacement from their paychecks. All capital investment and risk belongs to Defendants.

57. Plaintiff and the FLSA Collective are not required to have any specialized or unique skills prior to their employment at S&F. The job duties do not include any independently acquired skill, judgment or expertise, but rather, require Technicians to follow Defendants' procedures and training which outlines all aspect of the job. Technicians are fully trained on their job duties by shadowing experienced Technicians. Most Technicians have no cable installation experience prior to joining S&F.

58. Plaintiff and the FLSA Collective are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Technicians are the basis for Defendants' business and thus constitute an integral part thereof: S&F's business is the installation of Comcast cable services in residential homes and apartments, which is precisely the activity that Technicians perform.

59. Technicians are an integral part of Defendants' business and critical to Defendants' success. Without the Technicians, Defendants would not be able to provide installation services to Comcast.

60. Accordingly, Plaintiff and the FLSA Collective are economically dependent on Defendants and are thus employees and not independent contractors.

### III. Defendants Sophie Gabler and Fernando Huerta Are "Employers" Under the FLSA

61. Defendants Sophie Gabler and Fernando Huerta personally exercised economic and operational control over the relationships with piece-rate workers at S&F Communications, Inc., and both Gabler and Huerta are actively engaged in the management, supervision, and oversight of S&F's workers. This includes, but is not limited to:

    a. Designing, proposing, and implementing terms and conditions of work for Technicians, including rate and method of pay, training, and work policies;

    b. Determining staffing needs;

    c. Hiring, firing, and disciplining Technicians;

    d. Determining shift schedules;

    e. Determining minimum worker qualifications and training protocol;

    f. Communicating directly with workers regarding terms and conditions of employment; and

    g. Maintaining personnel records.

62. Defendants Sophie Gabler and Fernando Huerta are "employers" within the meaning under the FLSA, 29 U.S.C. § 203(d), and, as such, are jointly and severally liable along with Defendant S&F Communications, Inc. for all FLSA damages for failure to comply with the FLSA's overtime requirements.

63.     Defendants Sophie Gabler and Fernando Huerta are individually liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective.

## IV.    Claims of Similarly Situated Should Proceed Together

64.     All such similarly-situated individuals are known to Defendants and are readily identifiable through records accessible to and under the control of Defendants.

65.     Accordingly, notice should be sent to the FLSA Collective. There are potentially dozens of similarly-situated individuals who worked for S&F Communications, Inc. as Technicians and were underpaid for hours in excess of forty (40) per week based on Defendants' willful practice of not calculating and paying overtime, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join.

**CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY OVERTIME COMPENSATION**
*Brought by Plaintiff on Behalf of Himself and the FLSA Collective*

66.     Plaintiffs and the FLSA Collective restate and incorporate by reference the above paragraphs as if fully set forth herein.

67.     This claim arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et. seq.*, for failure to pay overtime compensation to Plaintiff and members of the FLSA Collective.

68.     The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees additional compensation for all hours worked over forty (40) hours per workweek. More specifically, the FLSA requires that such overtime hours must be compensated at a rate not less than one and one-half times the "regular rate" at which the employee is actually employed. *See id*. § 207(a).

69. Section 7(e) of the FLSA requires inclusion in the "regular rate" of "all remuneration for employment paid to, or on behalf of, the employee" except payments specifically excluded by paragraphs (1) through (7) of that subsection. *See* 29 U.S.C. § 207(e).

70. The FLSA requires that a pieceworker's "regular rate" of pay be calculated by adding together total earnings for the workweek from piece-rates, all other sources, and sums paid for waiting time, and dividing this sum by the number of hours worked in the week for which such compensation was paid. *See* 29 C.F.R. § 778.111(a). Employees paid on a piece-rate basis are entitled to be paid a sum of one-half times this "regular rate" for each hour worked in excess of forty in the week, or in the alternative, pursuant to an agreement reached prior to performance of the work, one-and-one-half the piece rate applicable to the same work when performed in non-overtime hours. *Id.*, 29 U.S.C. § 207(g). Defendants repeatedly and willfully suffered and permitted employees to work more than forty (40) hours per week without overtime compensation of any kind.

71. Defendants' actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff and the FLSA Collective properly at the required overtime rate.

72. As the direct and proximate result of Defendants' unlawful conduct, Plaintiff and the FLSA Collective have suffered a loss of income and other damages. Plaintiff and the FLSA Collective are entitled to liquidated damages and attorney's fees and costs incurred in connection with bringing this claim.

73. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the FLSA Collective, prays for judgment against Defendants as follows:

A. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B. A finding that Plaintiff and the FLSA Collective are non-exempt employees entitled to protection under the FLSA;

C. A finding that Defendants violated the overtime provisions of the FLSA;

D. A finding that Defendants' violations of the FLSA were willful;

E. Judgment against Defendants in the amount of Plaintiff's and the FLSA Collective's unpaid back wages at the proper rates;

F. An award of all damages, liquidated damages, pre-judgment interest and/or post-judgment interest;

G. An award of attorney's fees and costs incurred in prosecuting this action;

H. Leave to amend to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

I. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and those similarly situated demand a trial by jury of all issues triable to a jury in this case.

Dated: August 21, 2018                               **MILLER O'BRIEN JENSEN, P.A.**

                                                                       By: /s/ M. William O'Brien

        M. William O'Brien (#130229)
        Timothy J. Louris (#391244)
        Emily L. Marshall (#396594)
        Mary M. Musilek (#399355)
        Canadian Pacific Plaza, Suite 2400
        120 South Sixth Street
        Minneapolis, Minnesota 55402
        Phone: (612)333-5831
        Fax: (612)334-2613
        Email: bobrien@mojlaw.com
        Email: tlouris@mojlaw.com
        Email: emarshall@mojlaw.com
        Email: mmusilek@mojlaw.com
        ***ATTORNEYS FOR PLAINTIFFS***